

# PAVAN PARIKH
# HAMILTON COUNTY CLERK OF COURTS

## COMMON PLEAS DIVISION

**ELECTRONICALLY FILED**
**February 26, 2024 10:51 AM**
**PAVAN PARIKH**
**Clerk of Courts**
**Hamilton County, Ohio**
**CONFIRMATION 1436010**

PROCESS SOLUTIONS INC     A 2400916

vs.

PROGRESSIVE WATER
TREATMENT INC

**FILING TYPE: INITIAL FILING (IN COUNTY) WITH NO JURY DEMAND**

**PAGES FILED: 17**

EFR200

August T. Janszen (0062394)
Attorney for Plaintiff

## COURT OF COMMON PLEAS
## HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| PROCESS SOLUTIONS, INC.<br>7845 Palace Drive<br>Cincinnati, OH 45249 | : | Case No. _____ |
| | : | Judge: _____ |
| Plaintiff, | : | |
| v. | : | |
| PROGRESSIVE WATER<br>TREATMENT, INC.<br>C/O Statutory Agent and President<br>Marc Stevens<br>2535 E. University Drive<br>McKinney, TX 75069 | : | |
| | : | |
| | : | |
| | : | |
| Defendant. | | |

## COMPLAINT

Now comes Plaintiff, Process Solutions, Inc. (hereinafter "Plaintiff" or "PSI"), and for its Complaint against Defendant, Progressive Water Treatment, Inc. (hereinafter "Defendant" or "PWT"), states as follows:

### Background

1. Plaintiff PSI is an Ohio corporation with its corporate offices located at 7845 Palace Drive in Cincinnati, Hamilton County, Ohio 45249. PSI provides high-quality water and process fluid purification systems to a broad range of industries, including reverse osmosis systems.

2. Defendant is a Texas corporation with its corporate offices located at 2535 E. University Drive in McKinney, Texas 75069. PWT manufactures and sells equipment and technology used in water treatment systems.

3. Both PSI and PWT are "merchants" as that term is used and defined in R.C. 1302.01(A)(5) and UCC 2-103.

4. In January of 2021, PSI contacted Defendant and requested pricing for certain component parts, products, and related materials (hereinafter collectively "PWT Products"), to be used by PSI and incorporated into a larger project that PSI had proposed and contracted to perform for its customer, Refresco Beverages US Inc. ("Refresco").

5. At all times relevant to this matter, Defendant had actual notice and knowledge of the terms, conditions, and requirements in the proposal to Refresco, including the delivery deadlines, product and performance requirements, and PSI's contractual obligation to Refresco, which required all parties to perform within 38-40 weeks of receipt of the Refresco Purchase Order.

6. Based upon PSI's contractual obligations to Refresco, and in support of such contractual obligations, Defendant represented, warranted, and agreed to perform and deliver the PWT Products within 32-36 weeks upon receipt of the purchase order from PSI.

7. On December 30, 2021, PSI received the purchase order from Refresco and, on the same date, placed the purchase order for PWT Products with Defendant.

8. Defendant received the purchase order from PSI on December 31, 2021 for the PWT Products. A true and accurate copy of the PSI-PWT Project Proposal is attached hereto as Exhibit A and incorporated by reference.

9. Pursuant to the agreement PSI and Defendant, Defendant's deadline for performance and delivery of PWT Products was no later than September 8, 2021.

10. On January 21, 2022, PSI submitted a formal project schedule to Defendant to further confirm the deadline for delivery and performance.

JANSZEN LAW FIRM
A Legal Professional Association

11. Almost immediately upon receipt of the order from PSI, Defendant breached the agreement and failed to perform its obligations to PSI, including but not limited to failing to prepare the requisite drawings in a timely manner, failing to order source materials and products with significant lead times, and failing to meet other dates and deadlines, which were critical to PSI's own performance under its contract with Refresco.

12. Defendant further breached the agreement with PSI by failing to deliver the proper parts and/or components needed, delivering the wrong products and/or products that were the wrong size, and repeatedly making changes to the contract proposal and requirements, causing additional problems and delays.

13. In April of 2023, more than six months after the delivery deadline, Defendant had still not fully performed its contractual obligations to PSI, as some of the PWT Products had not yet been delivered.

14. As a direct and proximate result of Defendant's breach of contract, PSI suffered substantial losses and damages, including the cost of replacing Defendant's parts and/or components thereof, additional costs and labor expenses, and related damages, in an amount not less than $81,695.00. PSI's damages and losses are continuing and ongoing, as PSI continues to incur costs and expenses to remedy damages caused by Defendant's breach of contract.

15. On April 19, 2023, Defendant proposed that PSI request a reduced payment from Refresco, reducing the outstanding amount owed by twenty-five percent (25%), in consideration for prompt payment of the remaining balance, which would "leave quite a bit on the table for [Refesco]" to redress its own damages and losses, while Defendant continued to support the project and complete its performance. A true and accurate copy of this proposal is attached hereto as Exhibit B and incorporated by reference.

**JANSZEN LAW FIRM**
A Legal Professional Association

16. In response, in May of 2023, Refresco advised PSI that the delivery delays by Defendant had caused $95,247.40 in additional expenses and damages.

17. In reliance upon Defendant's propsal, PSI negotiated the payment of Defendant's invoices, subject to a back-charge of $61,979.82 assessed to PSI, solely relating to Defendant's excessive delays, defective performance, and breach of contract.

18. PSI has repeatedly made demands upon Defendant for payment of the damages and losses caused by Defendant's breach of contract, including the consequential damages and losses suffered by PSI as a result of this back-charge, but Defendant has failed and refused to pay the damages and losses.

### First Claim for Relief

19. Plaintiff incorporates by reference the facts and allegations set forth in the preceding paragraphs of this Complaint as if fully rewritten herein.

20. Defendant breached its contract with PSI.

21. As a direct and proximate result of Defendant's breach of contract, PSI has sustained actual damages and losses in an amount not less than $143,674.82.

22. PSI is entitled to an award of compensatory damages in an amount not less than $143,674.82, together with prejudgment and post-judgment interest at the statutory rate.

23. PSI is entitled to all costs and reasonable attorney's fees incurred herein.

### Second Claim for Relief

24. Plaintiff incorporates by reference the facts and allegations set forth in the preceding paragraphs of this Complaint as if fully rewritten herein.

25. Defendant affirmatively represented to PSI that up to twenty-five percent (25%) of its outstanding invoice could be used in negotiations with Refresco, relative to the damages caused

by Defendant in causing excessive delays and failing to perform in accordance with the project proposal.

26. Twenty-five percent (25%) of Defendant's outstanding invoice amount was $62,253.05.

27. PSI actually and reasonably relied upon Defendant's proposal and representations, to PSI's detriment, in negotiating a resolution of PSI's dispute with Refresco and resolving such claims for $61,979.82.

28. PSI actually and reasonably relied upon Defendant's proposal and representations, to PSI's detriment, in accepting a $61,979.82 loss on its project proposal with Refresco.

29. As a direct and proximate result of PSI's detrimental reliance upon the promises, proposals, and representations of Defendant, PSI has sustained actual damages and losses in an amount not less than $61,979.82.

**WHEREFORE**, Plaintiff hereby demands judgment against Defendant as follows:

(1) An award of compensatory damages in an amount to be determined at trial but not less than $143,674.82;

(2) An award of all costs and reasonable attorney's fees incurred herein; and

(3) All other legal and/or equitable relief to which Plaintiff may be entitled.

Respectfully submitted,

August T. Janszen (0062394)
JANSZEN LAW FIRM CO., L.P.A.
4555 Lake Forest Drive, Suite 330
Cincinnati, OH 45242
(513) 326-9065 (telephone)
(513) 326-9066 (facsimile)
atjanszen@janszenlaw.com
Attorney for Plaintiff,
Process Solutions, Inc.

**SERVICE INSTRUCTIONS TO THE CLERK OF COURTS:**

Please serve Defendant with a Summons and a copy of the Complaint at the address(es) set forth in the caption.

_____
August T. Janszen (0062394)

6

**JANSZEN LAW FIRM**
A Legal Professional Association

# Exhibit A



Progressive Water Treatment, Inc
2535 East University Drive
McKinney, Texas 75069
Phone: 972.562.3002
info@progressivewater.com
www.progressivewater.com

| Project: Refresco 400 GPM MMF/CF/UPW System | PWT Project #FQ219881 |
|---|---|
| Client: PSI / Ellen Adamski<br>ellen@psiwater.com | ITB/RFQ #EMAIL |
| Proposal Date/Rev #: 12-30-21 / H | Quote By: Mike Jenkins |

## Project Proposal

### Information Specific to this Project

Email correspondence dated 1-19-21 to present. This is a proposal for a 400 GPM Media Filter System, Carbon Filter System, and a UPW Skid. All piping will be minimum 304L SST except for the Chlorine Feed Skid. The Permeate Pumps/UPW Skid will included sanitary pipe and fittings.

### Bid Specifications

The following make up the entirety of specifications, drawings, and addenda that PWT used to provide this proposal. No other specifications, drawings, or addenda, whether listed or alluded to in these specifications, will apply to what has been proposed herein.

* Email dated 1-19-21, 5-13-21 to date.
* RO Feedwater RTC36312
* General Mechanical and Utility Piping Installation Specification-draft with all Edits 4_9_20
* Refresco Beverages Water Treatment Design Specification Rev6
* Refresco Water Treatment Design Specification
* 2900000PI-PG-01 GA-DWG

### PWT Scope

| Item | Description | Qty. | Add. Notes |
|---|---|---|---|
| 1. | **400 GPM Turbidex MF System** to include:<br>(3) 60" x 60" 150 psi ASME stamped, S.S. Tanks with 304L SST internal piping and SST skid base<br>(1) Each Valve nest on each tank of air operated butterfly valves and 304L SST piping<br>(3) Kunkle ASME relief valve on top of each tank<br>(1) Common inlet flow meter<br>(1) Common BW inlet flow meter<br>(2) Pressure Gauges and Transmitters (Inlet/Outlet. DP initiates BW over time)<br>(2) Perlick sanitary sample valves | 1 | (Lot) Turbidex and Gravel support bed media by others |

1



*Above and Beyond Clean Water*™



Progressive Water Treatment, Inc
2535 East University Drive
McKinney, Texas 75069
Phone: 972.562.3002
info@progressivewater.com
www.progressivewater.com

| Item | Description | Qty. | Add. Notes |
|---|---|---|---|
| 2. | **400 GPM Carbon System** to include:<br>(2) 102" x 144" 150 psi ASME stamped, S.S. Tanks (NEW) with 304L SST internal piping (steam sanitizable) and SST skid base<br>(1) Each Valve nest on each tank of air operated butterfly valves and 304L SST piping<br>(2) ASME relief valve on top of each tank<br>(1) Common inlet flow meter<br>(1) Common BW inlet flow meter<br>(2) Pressure Gauges and Transmitters (Inlet/Outlet. DP initiates BW over time)<br>(2) Perlick sanitary sample valves | 1 | (Lot) Carbon and Gravel support bed media By others. |
| 3. | **400 GPM RO Feed Pump/UV Skid** to include:<br>(2) 100%, Goulds Model #66SV20NM4F60, SST pump and 25HP motor assemblies, with VFD's<br>(1) Model #OPV08EDL SST, 254nm UV unit<br>(Lot) SST piping, Butterfly isolation valve<br>(1) Inline y-strainer for UV unit<br>(2) Pressure gauges and transmitters<br>(2) Perlick sanitary sample valves<br>Above components to be piped, valved, and mounted on a common, stainless steel skid. | 1 | |
| 4. | **Chlorine Feed Skid** to include:<br>(2) 100%, Grundfos metering pumps<br>(1) Calibration column<br>(1) Rosemount Chlorine Monitor and sensor<br>(Lot) Hastelloy pipe, valves, and fittings<br>Above components to be piped, valved, and mounted on a common, stainless steel skid. | 1 | |
| 5. | **Inhibitor Feed Skid** to include:<br>(2) 100%, Grundfos metering pumps<br>(1) Calibration column<br>(Lot) SST pipe, valves, and fittings<br>Above components to be piped, valved, and mounted on a common, stainless steel skid. | 1 | |
| 6. | **300 GPM RO Permeate Pump/Polishing Skid** to include:<br>(2) 100%, Fristam Model #FPR-1742, SST pump and 25HP motor assemblies, with VFD's<br>(1) Model # OPV04DDN, 254nm UV units | 2 | |

2



Above and Beyond Clean Water™



Progressive Water Treatment, Inc
2535 East University Drive
McKinney, Texas 75069
Phone: 972.562.3002
info@progressivewater.com
www.progressivewater.com

| Item | Description | Qty. | Add. Notes |
|---|---|---|---|
| | (1) Donaldson #1830 Sanitary Filter housing, 316L SST, EP-Ra 30-32 housing with Tri clamp fittings<br>(1) Inline y-strainer for UV unit<br>(Lot) EP SST piping, sanitary Butterfly isolation valves<br>(2) Pressure gauges and transmitters<br>(3) Perlick sanitary sample valves<br>Above components to be piped, valved, and mounted on a common, stainless steel skid. | | |
| 7. | **Retrofit Suez RO For CIP** to include modifications to the first stage, interstage, and final reject SST headers. PWT would build new headers with CIP connections consisting of vic connections with SST caps. Assembly in field would be by others. | 1 | |
| 8. | **Allen Bradley Compactlogix PLC Control unit** mounted in a common stand-alone NEMA 4X SST panel with a 10.4" Allen Bradley PanelView Plus 7 HMI unit. This PLC will control all pumps, instruments, etc. for all skids quoted herein. Also includes a Hoffman Spectracool 304SS A/C unit. | 1 | Control Panel is NEMA 4X |
| 9. | **Sodium Bisulfite Feed Skid** to include:<br>(2) 100%, Grundfos metering pumps<br>ORP meter to control pumps proportionally<br>(1) Calibration column<br>(Lot) SST pipe, valves, and fittings<br>Above components to be piped, valved, and mounted on a common, stainless steel skid. | 1 | |
| 10. | **Acid Feed Skid** to include:<br>(2) 100%, Grundfos metering pumps<br>(1) Calibration column<br>(1) PSI gauge<br>(Lot) Alloy 20 pipe, valves, and fittings<br>Above components to be piped, valved, and mounted on a common stainless steel skid. | 1 | |
| 11. | **400 GPM Carbon Filter Recirc Pump Skid** to include:<br>(1) 100%, Goulds Model #66SV20NM4F60, SST pump and 25HP motor assembly, with starter<br>(Lot) SST piping, Butterfly isolation valve<br>(2) Pressure gauges and transmitters<br>(2) Perlick sanitary sample valves<br>(2) Auto butterfly valves | 1 | |

3



*Above and Beyond Clean Water*™



Progressive Water Treatment, Inc
2535 East University Drive
McKinney, Texas 75069
Phone: 972.562.3002
info@progressivewater.com
www.progressivewater.com

| Item | Description | Qty. | Add. Notes |
|---|---|---|---|
|  | Above components to be piped, valved, and mounted on a common, stainless steel skid. |  |  |

## PWT Pricing

| Item | Description | Qty. | Price Each |
|---|---|---|---|
| 1 | **400 GPM Turbidex MF System** as detailed in item 1 above | 1 | $240,465.00 |
| 2 | **400 GPM Carbon System** as detailed in item 2 above | 1 | $371,339.00 |
| 3 | **400 GPM RO Feed Pump/UV Skid** as detailed in item 3 above | 1 | $33,558.00 |
| 4 | **Chlorine Feed Skid** as detailed in item 4 above | 1 | $29,377.00 |
| 5 | **Inhibitor Feed Skid** as detailed in item 5 above | 1 | $5,967.00 |
| 6 | **300 GPM RO Permeate Pump/Polishing Skid** as detailed in item 6 above | 1 | $49,479.00 |
| 7 | **Retrofit Suez RO For CIP** as detailed in item 7 above | 1 | $11,680.00 |
| 8 | **Allen Bradley Compactlogix PLC Control unit** as detailed in item 8 above | 1 | $73,527.00 |
| 9 | **Sodium Bisulfite Feed** option as detailed in item 9 herein. | 1 | $7,407.00 |
| 10 | **Acid Feed Skid** as detailed in item 10 above | 1 | $36,866.00 |
| 11 | **400 GPM Carbon Filter Recirc Pump Skid** as detailed in item 11 above. | 1 | $23,227.00 |

**Notes:**
1. Items in blue font are by others.

4



*Above and Beyond Clean Water*™



Progressive Water Treatment, Inc
2535 East University Drive
McKinney, Texas 75069
Phone: 972.562.3002
info@progressivewater.com
www.progressivewater.com

## Proposal Clarifications & Terms

| Item | Description | Spec. Item | Clarification |
|---|---|---|---|
| 1 | DELIVERY SCHEDULE | N/A | Estimated delivery for all skids with Control System is 32 – 36 weeks ARO. |
| 2 | PAYMENT TERMS | N/A | PWT PREFERS THE FOLLOWING PAYMENT TERMS: 15% WITH AWARD 20% WITH DRAWINGS 25% WITH RECEIPT OF VESSELS AT PWT SHOP 35% WITH SHIPMENT 5% FROM START UP OR NET 60 DAYS FROM DELIVERY; WHICHEVER OCCURS FIRST |
| 3 | ADDITIONAL SERVICES | N/A | PRICE DOES NOT INCLUDE ANY DELIVERY, INSTALL, OR START-UP SERVICES. |
| 4 | COMPONENTS BY OTHERS | N/A | ITEMS IN BLUE HEREIN ARE BY OTHERS. |
| 5 | MEDIA FOR FILTERS | N/A | ALL MEDIA FOR THE FILTERS IS BY OTHERS (TURBIDEX, CARBON, AND GRAVEL) |

## General Conditions

Terms and Conditions appearing in any order based on this proposal which are inconsistent herewith shall not be binding on Progressive Water. The sale and purchase of equipment described herein shall be governed exclusively by the foregoing proposal and the following provisions:

1. SPECIFICATIONS: Progressive Water Treatment, Inc. is furnishing its standard equipment as outlined in the proposal and as will be covered by final approved drawings. The equipment may not be in strict compliance with the Engineer's/Owner's plans, specifications, or addenda as there may be deviations. The equipment will, however, meet the general intention of the mechanical specifications of these documents.

2. ITEMS INCLUDED: This proposal includes only the equipment specified herein and does not include erection, installation, detail shop fabrication drawings, accessory or associated materials such as controls, piping, etc., unless specifically listed.

3. PARTIES TO CONTRACT: Progressive Water Treatment, Inc. is not a party to or bound by the terms of any contract between Progressive Water's customer and any other party. Progressive Water's undertakings are limited to those defined in the contract between Progressive Water and its direct customers.

5



*Above and Beyond Clean Water*™

E-FILED 02/26/2024 10:51 AM  /  CONFIRMATION 1436010  /  A 2400916  /  COMMON PLEAS DIVISION  /  IFI



Progressive Water Treatment, Inc
2535 East University Drive
McKinney, Texas 75069
Phone: 972.562.3002
info@progressivewater.com
www.progressivewater.com

4. PRICE AND DELIVERY: All selling prices quoted are subject to change without notice after 30 days from the date of this proposal unless specified otherwise. Unless otherwise stated, all prices are F.O.B. Progressive Water or its supplier's shipping points. All claims for damage, delay or shortage arising from such equipment shall be made by Purchaser directly against the carrier. When shipments are quoted F.O.B. jobsite or other designation, Purchaser shall inspect the equipment shipped, notifying Progressive Water of any damage or shortage within forty-eight hours of receipt, and failure to so notify Progressive Water shall constitute acceptance by Purchaser, relieving Progressive Water of any liability for shipping damages or shortages.

5. PAYMENTS: All invoices are net 30 days. Delinquencies are subject to a 1.5 percent service charge per month or the maximum permitted by law, whichever is less on all past due accounts. Pro rata payments are due as shipments are made. If shipments are delayed by the Purchaser, invoices shall be sent on the date when the Company is prepared to make shipment and payment shall become due under standard invoicing terms. If the work to be performed hereunder is delayed by the Purchaser, payments shall be based on the purchase price and percentage of completion. Products held for the Purchaser shall be at the risk and expense of the Purchaser. Unless specifically stated otherwise, prices quoted are for equipment only. These terms are independent of and not contingent upon the time and manner in which the Purchaser receives payment from the owner.

6. PAYMENT TERMS: Credit is subject to acceptance by our Credit Department if the financial condition of the Purchaser at any time is such as to give the Company, in its judgment, doubt concerning the Purchaser's ability to pay. The Company may require full or partial payment in advance or may suspend any further deliveries or continuance of the work to be performed by the Company until such payment has been received.

7. ESCALATION: If shipment is, for any reason, deferred by the customer beyond the normal shipment date, stated prices set forth herein are subject to escalation. The escalation shall be based upon increases in labor and material and other costs to Progressive Water that occur in the time period between quotation and shipment by Progressive Water, except as hereinafter set forth in subparagraph (b) below.

(a) The total quoted revised price is based upon changes in the indices published by the United States Department of Labor, Bureau of Labor Statistics. Labor will be related to the Average Hourly Earnings indices found in the Employment and Earnings publication and material will be related to the Metal and Metal Products indices published in wholesale Prices and Prices Indices.

(b) The total quoted revised price is based upon changes in the indices published by the United States Department of Labor, Bureau of Labor Statistics. Labor will be related to the Average Hourly Earnings indices found in the Employment and Earnings publication and material will be related to the Metal and Metal Products indices published in wholesale Prices and Prices Indices.

(c) Price revision for items furnished to, and not manufactured by Progressive Water, which exceed the above escalation calculation will be passed along by Progressive Water to Buyer based upon the actual increase in price to Progressive Water for the period from the date of quotation to the date of shipment by Progressive Water. Any item that is so revised will be excluded from the index escalation calculations set forth in subparagraph (a) above.

8. APPROVAL: If approval of equipment submittals by Purchaser or others is required, a condition precedent to Progressive Water supplying any equipment shall be such complete approval.

9. INSTALLATION SUPERVISION: Prices quoted for equipment do not include installation supervision or startup services unless noted in the proposal. Progressive Water recommends and will, upon request, make available, at Progressive Water's then current rate, an experienced site supervisor to act as the Purchaser's employee and agent to supervise installation/startup of the equipment. Purchaser shall at its sole expense furnish all necessary labor, equipment, and materials needed for installation and startup. Responsibility for proper operation of equipment if not installed by Progressive Water or installed in accordance with Progressive Water's instruction, inspected and accepted in writing by Progressive Water, rests entirely with Purchaser; and any work performed by Progressive Water personnel in making adjustment or changes must be paid for at Progressive Water's then current per diem rates plus living and traveling expenses plus 10%.

Progressive Water will supply the safety devices described in this proposal or shown in Progressive Water's drawings furnished as part of this order but excepting these, Progressive Water shall not be required to supply or install any safety devices whether required by law or otherwise. The Purchaser hereby agrees to indemnify and hold harmless Progressive Water from any claims or losses arising due to alleged or actual insufficiency or inadequacy or the safety devices offered or supplied hereunder, whether specified by Progressive Water or Purchaser, and from any damage resulting from use of the equipment supplied hereunder.

10. ACCEPTANCE OF PRODUCTS: Products will be deemed accepted without any claim by purchaser unless written notice of non-acceptance is received by Progressive Water within 30 days of delivery if shipped F.O.B. point of shipment, or 48 hours of delivery if shipped F.O.B. point of destination. Such written notice shall not be considered received by Progressive Water unless it is accompanied by all freight bills for such shipment, with Agent's notations as to damages, shortages and conditions of equipment, containers, and seals. Non-accepted products are subject to the return policy stated below.

11. TAXES: Any federal, state, or local sales, use or other taxes applicable to this transaction, unless specifically included in the price shall be for Purchaser's account.

12. TITLE: The equipment specified herein, and any replacements or substitutes therefore shall, regardless of the manner in which affixed to or used in connection with realty, remain the sole and personal property of Progressive Water until the full purchase price has been paid. Purchaser agrees to do all things necessary to protect and maintain Progressive Water's title and interest in and to such equipment; and upon Purchaser's default, Progressive Water may retain as liquidated damages any and all partial payments made and shall be free to enter the

6



*Above and Beyond Clean Water*™



Progressive Water Treatment, Inc
2535 East University Drive
McKinney, Texas 75069
Phone: 972.562.3002
info@progressivewater.com
www.progressivewater.com

premises where such equipment is located and remove the same as its property without prejudice to any further claims on account of damages or loss which Progressive Water may suffer from any cause.

13. INSURANCE: From date of shipment until the invoice is paid in full, Purchaser agrees to provide and maintain at its expense, but for Progressive Water's benefit, adequate insurance on the equipment against any loss of any nature whatsoever.

14. SHIPMENTS: Any shipment or delivery dates recited represent Progressive Water's best estimate but no liability, direct or indirect, is assumed by Progressive Water for failure to ship or deliver on such dates. In order to avoid shipment delays of our equipment, select components may be sent directly to the jobsite for installation by the equipment installer. Minor fit-up may be required.

Progressive Water shall have the right to make partial shipments; and invoices covering the same shall be due and payable by Purchaser in accordance with the payment terms thereof. If Purchaser defaults in any payment when due hereunder, Progressive Water may, without incurring any liability therefore to Purchaser or Purchaser's customers, declare all payments immediately due and payable with maximum legal interest thereon from due date of said payment, and at its option, stop all further work and shipments until all past due payments have been made, and/or require that any further deliveries be paid for prior to shipment.

If Purchaser requests postponements of shipments, the purchase price shall be due and payable upon notice from Progressive Water that the equipment is ready for shipment; and thereafter any storage or other charge Progressive Water incurs on account of the equipment shall be for the Purchaser's account.

If delivery is specified at a point other than Progressive Water or its supplier's shipping points, and delivery is postponed or prevented by strike, accident, embargo, or other cause beyond Progressive Water's reasonable control and occurring at a location other than Progressive Water or its supplier's shipping points.

If Purchaser refuses such delivery Progressive Water may store the equipment at Purchaser's expense. For all purposes of this agreement such tender of delivery or storage shall constitute delivery.

15. WARRANTY: PROGRESSIVE WATER WARRANTS EQUIPMENT IT SUPPLIES ONLY IN ACCORDANCE WITH THE WARRANTY EXPRESSED IN THE ATTACHED COPY OF PROGRESSIVE WATER WARRANTY AGAINST DEFECTS IN WORKMANSHIP AND MATERIALS WHICH IS MADE A PART HEREOF. SUCH WARRANTY IN LIEU OF ALL OTHER WARRANTIES, INCLUDING WARRANTIES OF MERCHANTABILITY AND FITNESS FOR PARTICULAR PURPOSE, WHETHER WRITTEN, ORAL, EXPRESS, IMPLIED OR STATUTORY, AND PROGRESSIVE WATER SHALL NOT BE LIABLE FOR ANY CONTINGENT, INCIDENTAL, OR CONSEQUENTIAL DAMAGES FOR ANY REASON WHATSOEVER.

16. PATENTS: Progressive Water agrees that it will, at its own expense, defend all suits or proceedings instituted against Purchaser and pay any award of damages assessed against it in such suits or proceedings, so far as the same are based on any claim that the said equipment or any part thereof constitutes an infringement of any apparatus patent of the United States issued at the date of this Agreement, provided Progressive Water is given prompt notice in writing of the institution or threatened institution of any suit or proceeding and is given full control of the defense, settlement, or compromise of any such action; and Purchaser agrees to give Progressive Water needed information, assistance, and authority to enable Progressive Water so to do. In the event said equipment is held or conceded to infringe such a patent, Progressive Water shall have the right at its sole option and expense to a) modify the equipment to be non-infringing, b) obtain for Purchaser the license to continue using said equipment, or c) accept return of the equipment and refund to the Purchaser the purchase price thereof less a reasonable charge for the use thereof. Progressive Water will reimburse Purchaser for actual out-of-pocket expenses, exclusive of legal fees, incurred in preparing such information and rendering such assistance at Progressive Water's request. The foregoing states the entire liability of Progressive Water, with respect to patent infringement; and except as otherwise agreed to in writing, Progressive Water assumes no responsibility for process patent infringement.

17. SURFACE PREPARATION AND PAINTING: If furnished, shop primer paint is intended to serve only as minimal protective finish. Progressive Water will not be responsible for condition of primed or finish painted surfaces after equipment leaves its shops. Purchasers are invited to inspect paint in shops for proper preparation and application prior to shipment. Progressive Water assumes no responsibility for field surface preparation or touch up of shipping damage to paint. Painting of fasteners and other touch-up to painted surfaces will be by Purchaser's painting contractor after mechanism installation. Motors, pumps, valves, and other components or instruments not manufactured by Progressive Water will be painted with that manufacturer's standard paint system. Our prices are based on paints and surface preparations as outlined in the main body of this proposal. In the event that an alternate paint system is selected, we request that your order advise of your selection. With your agreement, we will than either adjust our price as may be necessary to comply or ship the material unpainted if compliance is not possible due to application problems or environmental controls.

18. CANCELLATION, SUSPENSION, OR DELAY: After acceptance by Progressive Water, this proposal, or Purchaser's order based on this proposal, shall be a firm agreement and is not subject to cancellation, suspension, or delay except upon payment by Purchaser of appropriate charges which shall include all costs incurred by Progressive Water to date of cancellation, suspension, or delay plus a reasonable profit. Additionally, all charges related to storage and/or resumption of work, at Progressive Water's plant or elsewhere, shall be for Purchaser's sole account; and all risks incidental to storage shall be assumed by Purchaser.

19. RETURN OF PRODUCTS: No product may be returned to Progressive Water without our prior written permission, said permission may be withheld by Progressive Water at its sole discretion.

7



*Above and Beyond Clean Water*™

E-FILED 02/26/2024 10:51 AM / CONFIRMATION 1436010 / A 2400916 / COMMON PLEAS DIVISION / IFI



Progressive Water Treatment, Inc
2535 East University Drive
McKinney, Texas 75069
Phone: 972.562.3002
info@progressivewater.com
www.progressivewater.com

20. BACKCHARGES: Progressive Water will not approve or accept backcharges for labor, materials, or other costs incurred by Purchaser or others in modification, adjustment, service, or repair of Progressive Water-furnished materials unless such back charge has been authorized in advance in writing by a Progressive Water employee, by a Progressive Water purchase order, or work requisition signed by Progressive Water.

21. ENTIRE AGREEMENT: This proposal expresses the entire agreement between the parties hereto superseding any prior understandings, and is not subject to modification except by a writing signed by an authorized officer of each party.

22. EXTENDED STORAGE: Extended storage instructions will be part of information provided at shipment in the Operation and Maintenance Manuals. If equipment installation and start-up is delayed more than 30 days, the provisions of the storage instructions must be followed to keep WARRANTY in force.

23. ARBITRATION NEGOTIATION: Any controversy or claim arising out of or relating to the performance of any contract resulting from this proposal or contract issued, or the breach thereof, shall be settled by arbitration in accordance with the Construction Industry, Arbitration Rules of the American Arbitration Association, and judgment upon the award rendered by the arbitrator(s) may be entered to any court having jurisdiction.

24. LIABILITY: Liability for errors and omissions shall be limited to the greater of $10,000 or the value of the particular piece of equipment (not the value of the entire order) supplied by Progressive Water against which a claim is sought.

25. LIQUIDATED DAMAGES: Liquidated damages, when applicable, will be limited to $300 per day not to exceed 5% of the contract price.

**ACCEPTED BY PURCHASER**

BY: _____

TITLE: _____

DATE: _____

8

*Above and Beyond Clean Water*™

# Exhibit B

From: **Tom Marchesello | OriginClear** tom@originclear.com
Subject: Re: Payment for invoice #7735
Date: April 19, 2023 at 10:43 AM
To: Marc Stevens | Progressive Water marc@progressivewater.com, Ellen Adamski ellen@psiwater.com,
Mike Jenkins | Progressive Water mike@progressivewater.com

Yes Thanks Marc for relaying this message to the customers. As per our Legal Contract we are suppose to receive full payment upon delivery of this equipment. As for the Installation and Onsite action items we have the following thoughts.

1. It seems that normally PWT would have been informed by the customer and installation team that they intended to put water into the system and we should have been informed and we would have liked to have sent our staff onsite to assist with that important step and give guidance. Please let us know why this was skipped and the installer went forward without contacting us.
2. It seems there are some issues with valves and tightening etc. We will help you troubleshoot these matters today.
3. Our staff is committed to getting the equipment operational at the customer location. We are offering to send some staff up onsite to help as soon as we can. Today we have a few people sick so nobody is ready to get on a plane. But we are ready for Live Video Calls and walkthrough support.
4. As for the offer of 75% Marc outlined. We will support this recommendation. That leaves plenty of cash in hand to cover the services items currently being discussed. But it allows us to pay our suppliers for the parts and equipment that has been shipped.

Call me with any business questions. Mike Jenkins and I are here to help also. I will watch the next several days to oversight this project to completion and support Marc and the team. We are here to help get this done for all parties involved. Thanks.

**Tom Marchesello, COO**
OriginClear, Inc.
O: 323-939-6645 x208
M: 949-415-9259
e: tom@originclear.com

---

From: Marc Stevens | Progressive Water <marc@progressivewater.com>
Date: Wednesday, April 19, 2023 at 10:33 AM
To: Ellen Adamski <ellen@psiwater.com>, Mike Jenkins | Progressive Water <mike@progressivewater.com>, Tom Marchesello | OriginClear <tom@originclear.com>
Subject: Payment for invoice #7735

Ellen,

I need to ask if you could convince Refresco to pay 75% of this invoice. This leaves quite a bit on the table for them but we really need to collect a portion of that invoice. We will continue to support from here or even onsite to uncover the media and filters issues. Let me know your thoughts.